SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. HERMANN, OSB #126353**
Assistant United States Attorney
nicole.hermann@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00419-002-AB** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ANTHONY ALEMAN,** | |
| **Defendant.** | |

Defendant comes before the Court after pleading guilty to possession with the intent to distribute fentanyl. Based on defendant's active role in distributing fentanyl in Portland, and consistent with the plea agreement, the government recommends a sentence of 37 months' of imprisonment, followed by a five-year term of supervised release, and a $100 fee assessment.

## I. The Offense Conduct

On March 7, 2025, Portland Police Bureau (PPB) officers were on duty in downtown Portland, Oregon, when they saw a silver Infiniti, driven by the defendant, crash into a parked

vehicle while driving at a high rate of speed. PSR ¶ 18. The vehicle did not stop and instead took off and continued westbound down SW Clay Street. *Id*. Additional officers responded to the area and were able to locate the Infiniti nearby and conducted a traffic stop. PSR ¶ 19. Defendant was the driver of the vehicle and was not wearing a seatbelt, nor did he have a driver's license. PSR ¶ 20. One of the responding officers observed a McDonald's bag on the front passenger floorboard which appeared to contain a white, powdery substance consistent with fentanyl. PSR ¶ 19. Officers subsequently conducted a search of the vehicle and located a total of 218[1] gross grams of fentanyl concealed in various places within the vehicle. *Id*. Officers also located $358 in U.S. currency on defendant's person. *Id*. The powder located in the vehicle later tested presumptive positive for fentanyl, a Schedule II controlled substance. A short consent search of defendant's cell phone revealed a text message conversation discussing the sale of fentanyl. PSR ¶ 21.

In September 2025, investigators with the Westside Interagency Narcotics team (WIN) learned that a co-defendant was selling large quantities of fentanyl in the Portland area, and would be arriving at Wilkes Park in NE Portland, in order to conduct the sale of fentanyl. PSR ¶ 23 – 24. Investigators were provided with a description of the co-defendant and his vehicle. PSR ¶ 23. On September 29, 2025, investigators set-up around Wilkes Park and shortly thereafter observed a silver Infiniti arrive and park. PSR ¶24. Investigators watched as the co-defendant exited the driver's side of the Infiniti and met briefly with the driver of a separate vehicle who stopped nearby. *Id*. Investigators observed defendant sitting in the passenger seat of the Infiniti during the exchange. After confirming the co-defendant matched the description of the person WIN was investigating and observing additional indicators of involvement in the distribution of

[1] As noted in the PSR (PSR ¶ 20), the plea agreement references a total of 270 gross grams of fentanyl recovered. That number is an error and the correct total gross weight is 218 gross grams. This correction does not affect the base offense level calculation under USSG §2D1.1(a)(5)(A).

controlled substances, investigators observed the co-defendant return to the vehicle, and drive to another area of the park. Investigators then moved in to contact the defendant and co-defendant who both attempted to flee from the vehicle before being detained. PSR ¶ 25. Investigators searched the Infiniti after a canine alerted to the presence of drugs in the vehicle. PSR ¶ 26. Inside the vehicle, investigators found approximately 551.6 gross grams of fentanyl contained in various sandwich-style plastic bags throughout the vehicle. *Id*. Investigators also located a digital scale and additional packaging materials. *Id*. On defendant's person, investigators located a total of $231 in U.S. currency and an additional $401 in U.S. currency in the vehicle. PSR ¶ 25, 27. The powder located in the vehicle later tested presumptive positive for fentanyl, a Schedule II controlled substance.

## II. The Charges & Guilty Plea

Defendant was initially charged by federal complaint on September 30, 2025. ECF No. 1. Defendant made his first appearance on the complaint on October 2, 2025. ECF No. 4. On October 15, 2025, a federal grand jury returned a two-count indictment charging defendant with two counts of Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(A)(vi) (Count 1) and 841(b)(1(B)(vi) (Count 2). ECF No. 11. On August 7, 2026, defendant pled guilty to Count 1, Possession with Intent to Distribute Fentanyl. ECF No. 39.

## III. Guideline Computations

The government agrees with the computations as outlined in the PSR. The parties agree that defendant's base offense level is 30 under USSG §2D1.1(a)(5)(A). PSR ¶ 34. Although the parties and PSR agree that a mitigating role reduction pursuant to USSG §3B1.2 applies, such a reduction does not affect the base offense level under USSG §2D1.1(a)(5)(B), which remains at 30. PSR ¶ 34.

The government agrees with the PSR that a two-level adjustment for role as a minor participant under USSG §3B1.2(b) applies. PSR ¶ 37. Per the plea agreement, the parties agree that the defendant does not qualify as a minimal participant but does qualify as a minor participant. ECF No. 42 at ¶ 8. However, the parties do not have an agreement as to the appropriate adjustment under USSG §3B1.2(b). *Id*. The government agrees with the PSR's discussion of the applicability of the available adjustments under USSG §3B1.2(b), in particular the fact that while the defendant was acting at the direction of others, he had a degree of decision-making authority and an awareness on two occasions of being involved in drug trafficking. PSR ¶ 37. Given the facts of the case and the special instruction(s) laid out in USSG §2D1.1(e)(2)(B)(ii), the government agrees a 2-level adjustment for minor role is appropriate. PSR ¶ 37.

The parties further agree that defendant meets the criteria set forth in USSG §5C1.2(a)(1)-(5) and is eligible for a two-level safety valve reduction under USSG §2D1.1(b)(18). PSR ¶ 35.

Defendant has no criminal history points and receives a criminal history score of zero; as a result, he is eligible for an additional two-level reduction under USSG §4C1.1(a) as a zero-point offender. PSR ¶ 40.

Defendant's timely plea of guilty demonstrates that he fully admits and accepts responsibility under USSG § 3E1.1 for his unlawful conduct in this case, which is reflected in a three-level adjustment for acceptance of responsibility. PSR ¶¶ 41 – 42.

Finally, the government agrees with Probation that defendant scores zero criminal history points, placing him in CHC I. PSR ¶ 47.

In summary, the government made the following calculations in determining the defendant's total offense level:

| **Enhancement** | **Government's Position** |
|---|---|
| Base Offense Level —<br>USSG § 2D1.1(a)(5)(A) and (B)(i) | 30 (not contested) |
| Mitigating Role Adjustment —<br>USSG §3B1.2(b) | -2 (contested, PSR ¶ 37) |
| "Safety Valve" Criteria —<br>USSG § 2D1.1(b)(18) | - 2 (not contested) |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | - 3 (not contested) |
| Certain "Zero-Point" Offenders —<br>USSG § 4C1.1 | - 2 (not contested) |
| **Total Offense Level** | **21** |
| **Criminal History Category** | **I (PSR ¶ 47)** |
| **Resulting Guideline Range** | **37 - 46 months** |

## IV. Government's Sentencing Recommendation

Defendant appears in federal court for the first time for his role in the trafficking of over 750 gross grams of fentanyl in the greater Portland metro area on two separate occasions over a 6-month period. While defendant was not the leader or organizer of the organization, he showed on two separate occasions that he was certainly not a minimal participant in the delivery. As evidenced by the short search of defendant's phone, he maintained some autonomy over communicating with buyers, held cash and a large quantity of narcotics simultaneously, and benefited from the use of a vehicle. The government recognizes that defendant has no criminal history, however, defendant's involvement in the distribution of fentanyl was not minimal. The guidelines outlined above already recognize the defendant's record and willingness to take accountability and resolve his case. The government believes a low-end guidelines sentence is therefore appropriate, and further reductions in the sentence are not warranted.

The government recommends a low-end guidelines sentence of 37 months' of imprisonment. The government's sentencing recommendation is appropriate to hold defendant accountable for his actions, promote respect for the law, act as a deterrent, and provide just punishment for the offense. Most importantly, this sentence would protect the community from this offender for the foreseeable future.

## V. Forfeiture

There are no outstanding forfeiture matters to resolve, all property seized in this case remains in the custody of the state investigative agency and is not subject to federal forfeiture.

## VI. Conclusion

Based on the foregoing, the government recommends that the Court impose a sentence of 37 months' imprisonment, followed by a 5-year term of supervised release, subject to the mandatory, standard, and special conditions proposed by the Probation Office, and a $100 statutory special assessment fee.

Dated: October 21, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Nicole M. Hermann*
NICOLE M. HERMANN, OSB #126353
Assistant United States Attorney